HONORABLE BENJAMIN H. SETTLE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILD FISH CONSERVANCY; and WILD SALMON RIVERS d/b/a THE CONSERVATION ANGLER,

    Plaintiffs,

    v.

NATIONAL MARINE FISHERIES SERVICE; *et al.*,

    Defendants.

Case No. 3:24-cv-05296-BHS

CONSENT DECREE BETWEEN PLAINTIFFS WILD FISH CONSERVANCY AND THE CONSERVATION ANGLER AND DEFENDANTS WASHINGTON DEPARTMENT OF FISH AND WILDLIFE OFFICIALS

## I.   STIPULATIONS.

On January 26, 2024, Plaintiffs Wild Fish Conservancy and The Conservation Angler (the "Conservation Groups") issued a sixty (60) day notice of intent to sue ("First Notice Letter") for violations of the Endangered Species Act, 16 U.S.C. §§ 1531–1544 ("ESA"). The First Notice Letter alleged ESA violations against the following:

- The United States Department of Commerce and Gina Raimondo in her officially capacity as the Secretary of the United States Department of Commerce (collectively, "Commerce");

- The National Marine Fisheries Service and Janet Coit in her official capacity as NOAA's Assistant Administrator for Fisheries (collectively, "NMFS");

CONSENT DECREE – 1 Case No. 3:24-cv-05296-BHS

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

- The Director for the Washington Department of Fish and Wildlife and the Commissioners of the Washington Fish and Wildlife Commission (collectively, "WDFW");
- The Director for the Oregon Department of Fish and Wildlife and the Commissioners of the Oregon Fish and Wildlife Commission (collectively, "ODFW"); and
- Clatsop County Oregon, Don Bohn in his official capacity as the County Manager of Clatsop County Oregon, Clatsop County Fisheries, and Steve Meshke in his official capacity as the Natural Resources Manager for Clatsop County Fisheries (collectively, "Clatsop County").

The First Notice Letter alleged violations of sections 7 and 9 of the ESA, 16 U.S.C. §§ 1536, 1538, related to hatchery programs in the Lower Columbia River basin (i.e., below Bonneville Dam) that are funded under the Mitchell Act and violations of section 9 of the ESA, 16 U.S.C. § 1538, related to three Select Area Fisheries Enhancement ("SAFE") salmon hatchery programs.

On April 17, 2024, the Conservation Groups filed a complaint against Commerce, NMFS, WDFW, ODFW, and Clatsop County alleging violations of the ESA identified in the First Notice Letter ("Complaint").

On April 9, 2024, the Conservation Groups issued a second sixty (60) day notice of intent to sue ("Second Notice Letter") to Commerce and NMFS alleging violations of section 7 of the ESA, 16 U.S.C. § 1536, related to federal funding for the three SAFE hatchery programs.

On June 17, 2024, the Conservation Groups issued a third sixty (60) day notice of intent to sue ("Third Notice Letter") to Commerce, NMFS, WDFW, ODFW, and Clatsop County alleging violations of sections 7 and 9 of the ESA, 16 U.S.C. §§ 1536, 1538, related to hatchery programs in the Lower Columbia River basin (i.e., below Bonneville Dam) that are funded under the Mitchell Act and violations of section 9 of the ESA, 16 U.S.C. § 1538, related to the three SAFE salmon hatchery programs and a Select Area Bright fall Chinook salmon hatchery program.

The Conservation Groups' Complaint seeks declaratory and injunctive relief and an award of litigation expenses, including attorney and expert fees.

The Conservation Groups and WDFW (collectively, the "Settling Parties") have engaged in settlement negotiations. Following a settlement meeting on June 6, 2024, the Settling Parties agreed to work collaboratively on a modeling effort intended to predict future compliance and non-compliance with certain ESA requirements applicable to WDFW's salmonid hatcheries at issue in this lawsuit, and thereby aid in identifying measures needed to comply with those ESA requirements. To facilitate that collaborative modeling effort, the Settling Parties sought and were granted a stay of the litigation through August 19, 2024. The Settling Parties held another settlement meeting on August 19, 2024.

In addition to the measures specifically required under this Consent Decree, WDFW intends to undertake certain additional measures that WDFW represents, based in part on the aforementioned modeling efforts, will be sufficient to ensure compliance with ESA requirements applicable to WDFW's salmonid hatchery programs at issue in this litigation.

WDFW denies any fault, wrongdoing, or liability for the claims and violations alleged in the Conservation Groups' First Notice Letter, Second Notice Letter, and Third Notice Letter (collectively, "Notice Letters"), and in the Complaint;

Solely for the purposes of this Consent Decree, the Conservation Groups and WDFW stipulate that the Court has jurisdiction over the Settling Parties and the subject matter of this action under section 11(g) of the ESA, 16 U.S.C. § 1540(g);

The Settling Parties agree that settlement of this matter is in the best interest of the Settling Parties and the public and that entry of this Consent Decree without additional litigation is the most appropriate means of resolving in full this action against WDFW. The Settling Parties agree that this Consent Decree is fair, reasonable, equitable, does not violate the law or public policy, comes within the scope of the pleadings, and furthers the broad objectives upon which the Conservation Groups based the Complaint. *See Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990).

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

The Settling Parties stipulate to entry of this Consent Decree without trial, adjudication, or admission of any issue of fact, allegation, issue of law, or legal argument regarding the claims and allegations set forth in the Conservation Group's Notice Letters and Complaint;

The signatories for the Settling Parties certify that they are authorized by the party(ies) they represent to enter into these Stipulations and Consent Decree.

WILD FISH CONSERVANCY

By: *Emma Helverson*
Emma Helverson, Executive Director

THE CONSERVATION ANGLER

By: *David Moskowitz*
David Moskowitz, Executive Director

WDFW

By: *Kelly Susewind*
Kelly Susewind, Director

## II.    ORDER AND DECREE.

THIS MATTER came before the Court upon the foregoing Stipulations of the Settling Parties and joint motion for entry of Consent Decree. Having considered the Stipulations of the Settling Parties and the terms and conditions set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

A.    **DEFINITIONS.**

1.    The term "Conservation Groups" refers to Plaintiffs Wild Fish Conservancy and The Conservation Angler.

2.    The term "WDFW" refers collectively to Defendants the Director for the Washington Department of Fish and Wildlife and the Commissioners of the Washington Fish and Wildlife Commission.

3.    The term "NMFS" refers collectively to the National Marine Fisheries Service (also known as NOAA Fisheries Service) and Janet Coit in her official capacity as NOAA's Assistant Administrator for Fisheries.

4.  The term "Settling Parties" refers collectively to the Conservation Groups and WDFW.

5.  The term "ESA" refers to the Endangered Species Act, 16 U.S.C. §§ 1531–1544.

6.  The term "First Notice Letter" refers to the sixty (60) day notice of intent to sue issued by the Conservation Groups to WDFW and others on January 26, 2024.

7.  The term "Complaint" refers to the complaints filed in this matter on April 17, 2024 and September 6, 2024.

8.  The term "Second Notice Letter" refers to the sixty (60) day notice of intent to sue issued by the Conservation Groups to Commerce and NMFS on April 9, 2024.

9.  The term "Third Notice Letter" refers to the sixty (60) day notice of intent to sue issued by the Conservation Groups to WDFW and others on June 17, 2024.

10. The term "Notice Letters" refers collectively to the First Notice Letter, the Second Notice Letter, and the Third Notice Letter.

11. The term "BiOp" refers to a biological opinion prepared under section 7 of the ESA, 16 U.S.C. § 1536.

12. The term "ITS" refers to an incidental take statement issued within a biological opinion prepared under section 7 of the ESA, 16 U.S.C. § 1536.

13. The term "2017 Mitchell Act BiOp" refers to the BiOp issued by NMFS for its funding of hatchery programs under the Mitchell Act and is dated January 15, 2017 (NMFS Consultation Number: NWR-2014-697).

14. The term "2021 SAFE BiOp" refers to the BiOp issued by NMFS for three Select Area Fisheries Enhancement hatchery programs and is dated May 3, 2021 (NMFS Consultation Number: NWR-2014-697).

15. The term "LCR Mitchell Act Hatchery Programs" refers to those hatchery programs that release fish below Bonneville Dam and receive funding under the Mitchell Act, including all such programs covered by the 2017 Mitchell Act BiOp.

16. The term "SAFE Programs" refers to the programs covered by the 2021 SAFE BiOp.

17. The term "pHOS" refers to the "proportion of hatchery-origin spawners" as that term is used in the 2017 Mitchell Act BiOp and the 2021 SAFE BiOp.

B. **GENERAL TERMS.**

1. The Court has jurisdiction over the Settling Parties.

2. This Consent Decree applies to, is binding on, and inures to the benefit of the Settling Parties and their successors and assigns.

3. This Consent Decree is a settlement of disputed facts and law and, except as provided herein, shall not constitute an admission or adjudication with respect to any allegations of the Complaint or the Notice Letters, any fact or conclusion of law with respect to any matter alleged in or arising out of the Complaint or the Notice Letters, or admissions or evidence of any wrongdoing or misconduct on the part of WDFW.

4. Except as provided herein, this Consent Decree is a full and complete settlement and release of all ESA violations alleged by the Conservation Groups in the Complaint and the Notice Letters against WDFW that occurred prior to and through the date of entry of this Consent Decree.

C. **SPECIFIC TERMS.**

1. **Deep River Net Pens Coho Salmon Program.** WDFW shall terminate the Deep River Net Pens coho salmon program with releases in April 2025 of juvenile coho salmon from the 2023 brood year. Within one year (365 days) of the Court's entry of this Consent decree, WDFW shall have decommissioned and removed from the river the Deep River Net Pens.

2. **Washougal River Steelhead Hatchery Program.** Within ninety (90) days of the Court's entry of this Consent Decree, WDFW shall terminate the segregated winter steelhead hatchery program in the Washougal River basin and release into non-anadromous waters or remove any hatchery steelhead remaining in the facilities associated with that program. WDFW shall not collect broodstock or otherwise initiate an integrated steelhead hatchery program in the

Washougal River basin unless and until it receives coverage under an Incidental Take Statement applicable to ESA-listed species associated with that program under the ESA. Until the terms of this Consent Decree expire under Paragraph II.F.2 below, WDFW shall limit annual releases under any integrated steelhead hatchery program in the Washougal River basin to no more than 40,000 hatchery fish. Nothing in this Consent Decree affects the Conservation Groups' ability to object to or otherwise challenge NMFS's review or approval of an integrated steelhead hatchery program in the Washougal River basin or the Conservation Groups' ability to challenge WDFW's compliance with the ESA or other legal requirements with respect to an integrated steelhead hatchery program in the Washougal River basin.

3. **Kalama River/Fallert Creek Chinook Salmon Hatchery Program.** WDFW shall limit releases from the Kalama River/Fallert Creek Chinook salmon hatchery program in 2025 to 1.9 million hatchery fish. WDFW intends to evaluate pHOS data to determine whether that release number may be adjusted in future years in a manner consistent with applicable ESA requirements.

4. **Weir Operations Plan.** WDFW shall develop a Weir Operations Plan that includes the information in Paragraph II.C.4.a below for any existing or planned weirs funded through the Mitchell Act as of the date the Court enters this Consent Decree that WDFW operates or plans to operate in the Lower Columbia River (below Bonneville Dam) as part of the agency's efforts to reduce pHOS.

    a. Within thirty (30) days of the Court's entry of this Consent Decree, WDFW will provide the Conservation Groups with a draft Weir Operations Plan that addresses the following for each weir: general operations of the weir; criteria for assessing the efficacy of the weir in reducing pHOS and how that will be monitored; criteria for assessing the weir's impacts on the productivity of the wild salmonid population(s) and how that will be monitored; and how operations will be adapted based on these ongoing assessments. Within thirty (30) days of the Court's entry of this Consent Decree, WDFW shall also provide the Conservation Groups with all data in the Traps, Weirs, and Surveys database collected since and including 2017 by

WDFW on operations of Mitchell Act funded weirs in the Lower Columbia River (below Bonneville Dam) as part of WDFW's efforts to reduce pHOS levels, including all associated data related to fish distribution;

      b.    Within fourteen (14) days of WDFW providing its draft Weir Operations Plan to the Conservation Groups, the Conservation Groups may provide comments on the draft plan to WDFW which WDFW shall thereafter consider in good-faith and, within WDFW's discretion, may incorporate into the Weir Operations Plan; and

      c.    Within sixty (60) days of WDFW providing its draft Weir Operations Plan to the Conservation Groups, WDFW shall prepare a final Weir Operations Plan that addresses each item identified above in Paragraph II.C.4.a of this Consent Decree, provide a copy of the Weir Operations Plan to the Conservation Groups along with a written explanation from WDFW as to its rationale for rejecting any proposals provided in the Conservation Groups' comments, and provide a copy of the final Weir Operations Plan to NMFS to be considered under the ongoing ESA section 7 consultation on hatchery programs funded under the Mitchell Act.

    **5.**    **Compliance Review and Data Disclosure Program.** Within one hundred and eighty (180) days of entry of this Consent Decree by the Court, WDFW shall develop and implement a Compliance Review and Data Disclosure Program that will consist of databases hosted on WDFW's public-facing website that will provide the following information for each of the LCR Mitchell Act Hatchery Programs and SAFE Programs, if any, operated by WDFW:

      a.    identification of the currently applicable BiOp or other ESA authorization for the hatchery program;

      b.    identification and links to all annual reports prepared by WDFW during the last five years under the requirements of an applicable BiOp or other ESA authorization for the hatchery program; and

      c.    identification of the requirements imposed on each hatchery program under the currently applicable BiOp or other ESA authorization.

WDFW shall update the Compliance Review and Data Disclosure Program database at least each year for the duration of this Consent Decree to update the information disclosed for each hatchery program.

**6.     WDFW's Gillnet License Buyback.** WDFW shall send a letter to ODFW requesting that ODFW reserve any impacts calculated to result from Washington State's voluntary buy-back program for non-tribal commercial gillnet fishing licenses for conservation through increased wild salmonid escapement and/or for mark selective fisheries capable of harvesting surplus hatchery-reared salmon where needed to meet federal genetic protection requirements for wild salmon populations in a manner consistent with state-tribal fishery management agreements. The letter shall further request a meeting with the Director of the Washington Department of Fish and Wildlife and the Director of the Oregon Department of Fish and Wildlife to discuss such issues. The Conservation Groups may prepare a white paper setting forth their position, and the WDFW Director shall provide that paper in the meeting with the ODFW Director.

a.     Within sixty (60) days of the Court's entry of this Consent Decree, WDFW shall provide the Conservation Groups with a draft of the letter to ODFW;

b.     Within thirty (30) days of WDFW providing Conservation Groups with a draft of the letter to ODFW, the Conservation Groups may provide proposed revisions to the letter to WDFW, which WDFW shall thereafter consider in good-faith and within WDFW's discretion, may incorporate into the letter; and

c.     Within sixty (60) days of WDFW providing Conservation Groups with a draft of the letter to ODFW, WDFW shall prepare the final letter, provide copies to the Conservation Groups and to the Commissioners for the Washington Department of Fish and Wildlife, and issue the final letter to ODFW (including to the Director for the Oregon Department of Fish and Wildlife and to the Commissioners for the Oregon Fish and Wildlife Commission).

**7.     Alternative Fishing Gear Permitting.** WDFW shall send a letter to ODFW requesting that ODFW and WDFW amend the December 22, 2023, memorandum regarding Columbia River Emerging Commercial Fishery Direction in order to adjust the cap on authorizations allowed for alternative gear. The letter shall further request a meeting with the Director of the Washington Department of Fish and Wildlife and the Director of the Oregon Department of Fish and Wildlife to discuss such issues. The Conservation Groups may prepare a white paper setting forth their position, and the WDFW Director shall provide that paper in the meeting with the ODFW Director.

   a.   Within sixty (60) days of the Court's entry of this Consent Decree, WDFW shall provide the Conservation Groups with a draft of the letter to ODFW;

   b.   Within thirty (30) days of WDFW providing Conservation Groups with a draft of the letter to ODFW, the Conservation Groups may provide proposed revisions to the letter to WDFW which WDFW shall thereafter consider in good-faith and, within WDFW's discretion, may incorporate into the letter; and

   c.   Within sixty (60) days of WDFW providing Conservation Groups with a draft of the letter to ODFW, WDFW shall prepare the final letter, provide copies to the Conservation Groups and to the Commissioners for the Washington Department of Fish and Wildlife, and issue the letter to ODFW (including to the Director for the Oregon Department of Fish and Wildlife and to the Commissioners for the Oregon Fish and Wildlife Commission).

**8.     Tule Work Group Meeting Minutes and Notes.** Upon entry of this Consent Decree by the Court and until this Consent Decree terminates under Paragraph II.F.2 of the Consent Decree, WDFW shall provide the Conservation Groups with copies of any agendas, meeting minutes, and materials distributed to attendees for meetings of the Tule Work Group. Such materials shall be provided within seven (7) days of each meeting.

**9.     BiOp Compliance Meetings.** Within sixty (60) days of NMFS's issuance of a new BiOp on NMFS's funding of hatchery programs under the Mitchell Act, the Settling Parties shall meet for WDFW to identify what measures it intends to implement to comply with the new

[PROPOSED] CONSENT DECREE – 10
Case No. 3:24-cv-05296-BHS

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

BiOp's and the 2021 SAFE BiOp's (or a successor SAFE BiOp's) requirements. During each calendar year thereafter and until the termination of this Consent Decree, the Settling Parties shall meet on or before July 15 of each calendar year to discuss WDFW's compliance with the new BiOp and the 2021 SAFE BiOp (or a successor SAFE BiOp) during the preceding year and any modifications to operations that WDFW intends to undertake as part of its efforts to comply with the new BiOp and the 2021 SAFE BiOp (or a successor SAFE BiOp). At least seven (7) days before each meeting held under the requirements of this paragraph, WDFW shall provide the Conservation Groups with the current version of any model then-used by WDFW to predict pHOS rates for hatchery programs covered by the new BiOp and/or the 2021 SAFE BiOp (or a successor SAFE BiOp).

      **10.**    **Recovery of Litigation Expenses.** WDFW stipulates that the Conservation Groups are entitled to an award from WDFW of their reasonable litigation expenses, including costs and fees (including attorneys' and retained litigation expert fees), incurred in pursuing their ESA claims against WDFW. The Settling Parties have agreed to $160,000 as the amount of this award. Such payment shall be made within fourteen (14) days of the Court's entry of this Consent Decree via electronic funds transfer or wire transfer to an IOLTA account maintained by Kampmeier & Knutsen, PLLC.

**D.**    **RELEASE OF CLAIMS, COVENANT NOT TO SUE, AND RESERVATION OF RIGHTS.**

      **1.**    **Satisfaction and Release.** This Consent Decree is a full and complete settlement and release of all ESA violations alleged by the Conservation Groups in the Complaint and the Notice Letters against WDFW that occurred prior to and through the date of entry of this Consent Decree. Those claims against WDFW are dismissed with prejudice and the Conservation Groups covenant not to initiate an ESA lawsuit against WDFW for those claims.

      **2.**    **Covenant Not to Sue.** The Conservation Groups covenant not to sue WDFW for alleged violations of the ESA that occur on or before December 31, 2024, related to WDFW's hatchery programs in the lower Columbia River (i.e., below Bonneville Dam) that receive

[PROPOSED] CONSENT DECREE – 11
Case No. 3:24-cv-05296-BHS

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

funding under the Mitchell Act or related to WDFW's SAFE hatchery programs in the lower Columbia River (i.e., below Bonneville Dam). The Conservation Groups further covenant not to sue WDFW for violations of the ESA that are caused by the number of adult hatchery fish present in lower Columbia River (i.e., below Bonneville Dam) tributaries (e.g., pHOS exceedances) on or before December 31, 2027.

   **3.**  **Reservation of Rights.** Subject to the provisions of Paragraph II.D.1 of this Consent Decree, nothing in this Consent Decree precludes or in any way affects the Conservation Groups' ability to challenge any evaluation, authorization, or exemption from liability issued under the ESA, the National Environmental Policy Act, or otherwise for any hatchery program owned and/or operated by WDFW. Nothing in this Consent Decree precludes or in any way affects the Conservation Groups' ability to pursue its remaining claims in this matter.

**E.**  **RETENTION OF JURISDICTION AND DISPUTE RESOLUTION.**

   1.  The Court will retain jurisdiction over this Consent Decree and allow this case to be reopened without filing fee for the purpose of enabling the Settling Parties to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance with, and/or resolve any dispute regarding the terms or conditions of this Consent Decree.

   2.  In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the Settling Parties will first attempt to informally resolve the dispute through conferral among the Settling Parties. The dissatisfied Settling Party shall provide the other Settling Parties written notice of the dispute and a request for conferral. The Settling Parties shall thereafter confer in a good faith effort to resolve the dispute within fourteen (14) days. If the Settling Parties are unable to resolve the dispute during the applicable period, a Settling Party may thereafter file with the Court a motion to enforce the Consent Decree and/or seeking other appropriate relief.

CONSENT DECREE – 12 Case No. 3:24-cv-05296-BHS

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515

3. In any action to construe or enforce this Consent Decree, the Court shall apply the same standard applied by courts in awarding fees and costs under section 11(g)(4) of the ESA, 16 U.S.C. § 1540(g)(4).

## F. EFFECTIVE DURATION OF THE CONSENT DECREE.

1. This Consent Decree shall be effective upon its entry by the Court.

2. This Consent Decree, and all obligations, agreements, commitments, and covenants under it shall terminate five (5) years after its entry by the Court.

## G. NOTICE AND CORRESPONDENCE.

All notices and correspondence made with respect to this Consent Decree shall be in writing and shall be effective on the date it is delivered. Electronic mail shall be deemed delivered when it is issued, unless the sender receives notification that the electronic mail was not deliverable. Notice shall be provided as follows:

Notice to Conservation Groups:

Emma Helverson
Wild Fish Conservancy
P.O. Box 402
Duvall, Washington 98019
Email: emma@wildfishconservancy.org

And,

David Moskowitz
The Conservation Angler
P.O. Box 13121
Portland, Oregon 97217
Email: david@theconservationangler.org

And,

Brian A. Knutsen
Emma A. O. Bruden
Kampmeier & Knutsen, PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
Email: brian@kampmeierknusten.com
Email: emma@kampmeierknutsen.com

Notice to WDFW:

James Scott
Washington Department of Fish and Wildlife
1111 Washington Street SE
Olympia, WA 98501-1051
Email: James.Scott@dfw.wa.gov

And,

Edward D. Callow
John Heidinger
Office of the Attorney General
1125 Washington Street SE
P.O. Box 40100
Olympia, WA 98504-0100
Email: Ted.Callow@atg.wa.gov
Email: John.Heidinger@atg.wa.gov

CONSENT DECREE – 13 Case No. 3:24-cv-05296-BHS

Upon written notice to the other Settling Parties, any Settling Party may designate a successor contact for any matter relating to this Consent Decree.

**H.	MUTUAL DRAFTING AND CONSTRUCTION.**

1.	It is expressly understood and agreed that this Consent Decree was jointly drafted by the Settling Parties. Accordingly, the Settling Parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Consent Decree.

2.	This Consent Decree is the entire agreement between the Settling Parties in this case. All prior conversations, meetings, discussions, drafts, and writings of any kind are specifically superseded by this Consent Decree.

**I.	EXECUTION OF CONSENT DECREE.**

1.	This Consent Decree may be executed in any number of counterpart originals, each of which will be deemed to constitute an original agreement, and all of which shall constitute one agreement. The execution of one counterpart by any Settling Party shall have the same force and effect as if that Settling Party has signed all other counterparts.

2.	Signature on a counterpart or authorization of an electronic signature shall constitute a valid signature.

3.	If for any reason the Court should decline to approve this proposed Consent Decree in the form presented, this Consent Decree is voidable at the discretion of any Settling Party. The Settling Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

ENTERED and DATED this 10th day of October, 2024.

_____
HONORABLE BENJAMIN H. SETTLE
UNITED STATES DISTRICT JUDGE

Presented by:

KAMPMEIER & KNUTSEN, PLLC

By: s/ Brian A. Knutsen
 Brian A. Knutsen, WSBA No. 38806
Emma Bruden, WSBA No. 56280
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 841-6515 (Knutsen)
 (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
 emma@kampmeierknutsen.com

*Attorneys for Plaintiffs Wild Fish Conservancy and The Conservation Angler*

ROBERT W. FERGUSON
Attorney General

By: s/ Edward Callow
 Edward Callow, WSBA No. 30484
John G. Heidinger, WSBA No. 50984
Public Lands and Conservation Division
1125 Washington Street SE
P.O. Box 40100
Olympia, WA 98504-0100
360-664-2854 (Callow)
360-753-2496 (Heidinger)
Ted.Callow@atg.wa.gov
John.Heidinger@atg.wa.gov

*Attorneys for WDFW*

CONSENT DECREE – 15
Case No. 3:24-cv-05296-BHS

KAMPMEIER & KNUTSEN, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515